IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **JERIME MILLS** | § | CIVIL ACTION NUMBER |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| | § | _____ |
| **RelaDyne West, LLC,** | § | |
| **RelaDyne, LLC** | § | |
| **Defendant(s)** | § | |
| | § | |
| | § | |
| | § | **JURY REQUESTED** |

**PLAINTIFF, JERMIE MILLS, ORIGINAL COMPLAINT**

**PRELIMINARY STATEMENT:**

This employment lawsuit is brought for retaliation under 42 U.S.C. § 1981 (Section 1981), as amended.

**A. PARTIES**

1. During all times mentioned in this petition, Plaintiff, Jerime Mills, (hereinafter "Plaintiff") was and still is a United States Citizen and a resident of Harris County, Texas. Mills is a black male that engaged in protected activity.

2. Defendant, RelaDyne West LLC a/k/a Reladyne, LLC, (hereinafter "Defendant") is a foreign limited liability company, that is incorporated under the laws of the State of Texas where suit is filed. Defendant may be served by serving its registered agent, C T Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## B. JURISDICTION

3. Jurisdiction is invoked pursuant to 42 U.S.C. § 1331.

4. Declaratory, injunctive, and equitable relief is sought pursuant to 42 U.S.C. § 1981a.

5. Compensatory and punitive damages are sought pursuant to 42 U.S.C. § 1981a.

6. Costs and attorney's fees may be awarded pursuant to 42 U.S.C. § 1981a and Rule 54 of the Federal Rules of Civil Procedure.

## C. VENUE

7. This action properly lies in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices and other misconduct were committed in this judicial district.

## D. EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission (EEOC). Plaintiff files this complaint within 90 days after receiving a notice of the right to sue from the EEOC. A copy of the notice of the right to sue is attached as Exhibit 1.

## E. FACTUAL STATEMENT

9. Plaintiff was employed by Defendant in or about January 2016. During his employment, Plaintiff always did great work and earned satisfactory evaluations until he was placed under a supervisor who did not have direct access to his work.

10. Sometime in 2019, Winston Shields was the Services Department Manager. Winston had discrepancies with the position he held, along with complaints within the department. David Brooks was sitting branch manager at this time and was in a position to terminate personnel that whistle-blew and reported issues within the branch.

11. After the employees that whistle-blew were terminated, Winston Shields and Rafe Odom exchanged positions and roles within the branch, under the direct supervision of David Brooks.

12. Once Shields and Odom were awarded the services manager position, he and

Odom made arrangements that were in direct conflict of interest with Defendant. After their promotion, Plaintiff's work was limited in the department.

13. Plaintiff and a colleague initiated the start-up of the service called, "Diesel Polishing." They were the only technicians authorized to operate this equipment for this service and possess the knowledge to successfully execute the jobs that this equipment was made for.

14. Without approval of the company, Winston and Rafe began using the machines that were built by Plaintiff and colleague. Because Rafe was considered essential to Defendant, Defendant independently handed over the service of, "Diesel Polishing."

15. Plaintiff and colleague expressed concerns about giving the department to Rafe, who was not privy to how the department was to conduct business. Plaintiff was given the explanation that he was overqualified to continue operating the service and Rafe withheld, "Diesel Polishing," jobs from Plaintiff.

16. However, another colleague in the same department, who had personal ties to Winston and Rafe, was given the green light to assist in performing, "Diesel Polishing," tasks that were not recorded through the company. Rafe was able to make profits outside of his employment with Defendant based on, "Diesel

Polishing," established by Plaintiff. Rafe's work was a conflict of interest for Rafe and Defendant.

17. The employees that complained about managers were terminated while Plaintiff was moved to another company owned by Defendant.

18. Albeit the move, Plaintiff was given an offer letter with a non-compete clause that prohibited Plaintiff from working in the same line of expertise from a customer or competitive company for two years from the date of termination.

19. On or about October 2019, Plaintiff and colleague met with the human resources manager and at this time expressed their concern, apprising him of what was happening with management. Also, Plaintiff complained of decline in work. John Ferguson, Branch Manager, asked Plaintiff what he knew about the "Diesel Polishing," ordeal.

20. John Ferguson stated, "It all made sense as to why I have to keep cutting checks for material and supplies for a service that's not bringing any revenue." Ferguson also stated, "This was the reason we had to terminate other employees because they were whistle-blowing to corporate about what was going on at the branch." Lastly, after inquiring about a management position, Ferguson stated, "Before I took this position, I was told that you guys were best suited for field work and activities."

21. Individuals were given promotions who were white and did not have the

experience nor education. It was also discovered that persons in management were creating positions for personal associates, outside of work, and bringing them under special training programs that were not offered to others.

22. Because of their backgrounds, Winston or Rafe could receive access into refineries. At the same time, Plaintiff and colleague were put in positions to perform both technician and management duties because of their backgrounds. With that, they would not promote Plaintiff to management. Caucasians were given the opportunity for management, while still lacking necessary degrees, experience or proper training.

23. On or about November, 2019, Plaintiff was given additional job duties that did not fall within TXDOT and OSHA guidelines. Plaintiff complained and was given push back, being told that he would be terminated if he did not do the work even though it was not NON-CDL compliant nor within the guideline of OSHA and TXDOT.

24. Once Plaintiff was given new job at the refinery, he was told that he would be operating and driving the hazmat trucks through the facility in order to reach the unit that the nitrogen truck was operating. Plaintiff communicated with management that this operation did not fall within the scope of duties assigned and the tasks assigned to Plaintiff were not within OSHA or safety guidelines. Again, Plaintiff expressed to Rafe and Winston that it was not safe to perform

what was instructed. Plaintiff was told, "Do as instructed or turn in my uniform."

25. Plaintiff was assigned to a special assignment, under their direct supervision. This emergency assignment would have a duration of over a month's time. During this time, Plaintiff performed unauthorized work inside of the refinery, with the branch location and managers knowing. Plaintiff apprised safety and DOT personnel at the refinery office.

26. Specifically, Plaintiff told the DOT and OSHA personnel that he was blowing the whistle on what was going on inside the refinery. During this time, Plaintiff began receiving harassing phone calls, texts, and e-mails about signing the aforementioned offer letter and non-compete.

27. After a few days, Plaintiff did not hear back regarding the reported violations of unauthorized work. Regional human resources contacted Plaintiff attempting to get his signature on the offer letter and non-compete. Plaintiff was told if he didn't sign the documents and stop reporting, he would be terminated.

28. On New Year's Day, Plaintiff received a phone call and text from Rafe Odom regarding the offer letter and non-compete. Rafe asked if Plaintiff signed and turned in the non-compete. Plaintiff responded he had not received the corrections or feedback on the markups made so that he can sign without any

issues.

29. Rafe stated that Plaintiff needed to report to the office first thing in the morning on January 2, 2020. Upon arriving to the office, Plaintiff was instructed to wait in the company truck until Plaintiff was called into the office. Once called into the office, Rafe Odom and John Ferguson tried to force the Plaintiff to sign the documents. After reviewing the document, Plaintiff saw that they were termination papers.

30. Prior to, Plaintiff had not been placed on any suspension or had not been written up prior to termination. Plaintiff had not been reprimanded for his performance.

31. If Defendant had not discriminated and retaliated against Plaintiff, Plaintiff would have received wages, pay increases, bonuses, and other employee benefits.

32. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs experienced and is now suffering, and will continue to suffer, irreparable injury from treatment by Defendant unless he is fully compensated for back pay, front pay and other employee benefits lost since the date of termination.

33. Plaintiff has suffered, is now suffering, and will continue to suffer emotional pain, suffering inconvenience, mental anguish, loss of enjoyment of life, loss

to his professional reputation, embarrassment, and other pecuniary losses as a direct result of Defendant's discriminatory practices.

34. Plaintiff will suffer future pecuniary losses as a direct result of Defendant's discriminatory and retaliatory practices.

35. Defendant engaged in discrimination and retaliation against Plaintiff with intent, malice, or reckless indifference to his rights under federal law.

## CAUSES OF ACTION

36. Plaintiff incorporates as if re-alleged paragraphs 1-32.

37. Since Plaintiff was terminated because of his race and/or his decision to engage in protected activity, Defendant has intentionally, maliciously, and willfully violated Section 1981, as amended.

## PRAYER FOR RELIEF

38. Wherefore, Plaintiff prays that this Court:
    a. declares the conduct engaged in by Defendant be in violation of Plaintiff's rights;
    b. enters judgement against Defendant;
    c. enjoins Defendant from engaging in such conduct;
    d. reinstates him, or in lieu of reinstatement, order front salary and benefits

    for the period remaining until normal retirement;

  e. awards Plaintiff equitable relief of back salary and fringe benefits up to the date of termination and prejudgment interest for that entire period, or front salary benefits accrual;

  f. awards Plaintiff compensatory and punitive damages of $10,000,000.00.

  g. grants such other relief as it may deem just and proper.

**DEMAND FOR JURY**

39. Plaintiff demands a jury trial.

Respectfully submitted,

**LAW OFFICE OF JOSEPH K. PLUMBAR**

*/s/ Joseph K. Plumbar*
**JOSEPH K. PLUMBAR**
Federal Bar No. 1493814
1200 Rothwell Street
Houston, Texas 77002
713.384.5507 (office)
866.252.3048 (facsimile)
**ATTORNEY FOR PLAINTIFF**